IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ELENA E. TOLSTIH**, Individually
and as Administrator of the
Estate of Gregory Vertsman,

        Plaintiff,

  vs.                                        Civil Action 2:07-CV-582
                                                      Judge Frost
                                                      Magistrate Judge King

**L.G. ELECTRONICS, USA,
INC.,** *et al.,*
        Defendants.

## OPINION AND ORDER

This matter is before the Court on three pending discovery motions. *Plaintiff's Motion to Compel*, Doc. No. 19 ("*Motion to Compel*"); *Defendant LG Electronics U.S.A., Inc.'s Combined Motion for Protective Order and Memorandum in Opposition to Plaintiffs [sic] Motion to Compel Discovery*, Doc. No. 20 ("*Motion for Protective Order*"); *Defendant LG Electronics U.S.A., Inc.'s Motion to Strike Supplemental Affidavit of Rand Gulvas*, Doc. No. 47 ("*Motion to Strike*").

I.    BACKGROUND

This is a wrongful death action in which plaintiff alleges that a dehumidifier manufactured and/or distributed by defendants was defective and caused a fire at her residence on January 27, 2007, causing the death of Gregory Vertsman and injuries to plaintiff. *Complaint*, Doc. No. 2. The Court has established a discovery completion date of April 30, 2009, and a dispositive motion filing date of June 1, 2009. *Preliminary Pretrial Order*, Doc. No. 11;

*Scheduling Order*, Doc. No. 12. The final pretrial conference is scheduled for October 28, 2009, and trial will begin on December 7, 2009. *Scheduling Order*.

On November 13, 2007, plaintiff served on defendant LG Electronics U.S.A., Inc. ("LG USA")[1] her first set of interrogatories and requests for production of documents. Exhibits 1 and 2, attached to *Motion to Compel*. In those requests, plaintiff seeks extensive discovery regarding all dehumidifiers manufactured or distributed by defendants. On December 31, 2007, LG USA objected on several grounds, but provided some information regarding the subject dehumidifier model.[2] *Id*. The parties attempted to resolve their discovery dispute extrajudicially, but were unable to do so. Exhibit 4, attached to *Motion to Compel*. Accordingly, plaintiff filed the *Motion to Compel* seeking answers to eight different interrogatories and four requests to produce. In response, LG USA requested a protective order limiting the scope of discovery. *Motion for Protective Order*.[3] On May 8, 2008,

---

[1] LG USA, a wholly owned subsidiary of defendant LG Electronics, Inc. ("LG Electronics"), distributes certain products for its parent company. *Joint Answer of Defendants*, ¶ 2, Doc. No. 9. Defendant LG Electronics, Inc. is a Korean corporation that designs and manufacturers dehumidifiers. *Complaint*, ¶ 3; Exhibit B, *Supplemental Responses to Plaintiff's First Set of Interrogatories to Defendant LG Electronics, U.S.A., Inc.*, attached to *Motion for Protective Order*.

[2] LG USA initially provided information regarding model number GD40E. Exhibits 1 and 2, attached to *Motion to Compel*. However, after the parties jointly disassembled the dehumidifier in question, the parties discovered that the appropriate model number is LD40 or DH400M, not GD40E. *Motion for Protective Order*, p. 2 n.1. LG USA represents that these models are identical "except for model number." *Id*. LG USA supplemented its discovery responses to address models LD40 and DH400M. Exhibit B, attached to *Motion for Protective Order*. The Court will subsequently refer to this exhibit by the relevant interrogatory number or document request number.

[3] LG USA also requested oral argument on this matter. *Id*. Because this matter can be decided on the briefs and materials submitted to the Court, LG USA's request is **DENIED**.

plaintiff opposed this request, asking the Court to compel LG USA's discovery responses and attaching in support the affidavit of Rand Gulvas, an electrical engineer retained as plaintiff's expert witness in this action. Exhibit 1, *Affidavit of Rand Gulvas*, ¶ 2 ("*First Gulvas Aff.*"), attached to *Plaintiff's Combined Reply Memorandum in Re: Motion to Compel and Memorandum Contra Motion for Protective Order*, Doc. No. 24 ("*Plaintiff's Reply Supporting Motion to Compel*").[4]

A week after LG USA filed its reply in support of its *Motion for Protective Order*, plaintiff sought leave to file a supplemental affidavit of Mr. Gulvas. *Defendant LG Electronics U.S.A., Inc.'s Reply Memorandum in Support of its Motion for Protective Order*, Doc. No. 38 ("*LG USA's Reply Supporting Motion for Protective Order*"); *Plaintiff's Motion for Leave to Submit Supplemental Affidavit*, Doc. No. 43 ("*Plaintiff's Motion for Leave*"). The Court granted plaintiff's request on June 17, 2008. *Order*, Doc. No. 44; *Affidavit of Rand Gulvas*, Doc. No. 45 ("*Gulvas Supp. Aff.*"). On July 8, 2008, LG USA moved to strike this supplemental affidavit. *Motion to Strike*.

Thereafter, plaintiff's counsel moved to withdraw as attorney for plaintiff in this action. *Motion of Plaintiff's Counsel to Withdraw*, Doc. No. 57. After advising plaintiff of her right to respond to her counsel's request and receiving no response for plaintiff, the Court granted counsel's motion to withdraw. *Order*, Doc. Nos. 58, 61. During a status conference on October 9, 2008, the Court was advised that counsel reviewing plaintiff's case would need 30 days to determine whether or not to enter an appearance on plaintiff's behalf

---

[4]Mr. Gulvas examined the dehumidifier at issue in this litigation. *First Gulvas Aff.* ¶ 3.

in this case. *Order*, Doc. No. 62. On November 5, 2008, plaintiff appeared at a status conference without counsel and requested additional time to secure representation. *Order*, Doc. No. 63. The Court observed that plaintiff had known of her former counsel's intent to withdraw for more than 60 days, but nevertheless granted plaintiff a short extension to secure new counsel. *Id*. The Court also scheduled a status conference for November 19, 2008, advising the parties that it intended to address the status of discovery, including the outstanding discovery motions, and the pretrial schedule. *Id*.

On November 11, 2008, new counsel entered an appearance on behalf of plaintiff. *Notice of Appearance*, Doc. No. 64. During the conference of November 19, 2008, the Court extended the discovery completion date to May 31, 2009, but maintained the same deadline for filing dispositive motions and the same final pretrial and trial dates. *Order*, Doc. No. 65. The Court ordered the parties to report on the status of the outstanding discovery motions by December 5, 2008. *Id*.

Thereafter, the parties requested three additional extensions of time to resolve the outstanding motions, representing that "substantial progress towards resolution" was being made. Doc. Nos. 66, 68 and 71. The Court granted the parties' requests for extensions, most recently ordering the parties to report on the status of the outstanding motions by February 5, 2009. Doc. Nos. 67, 69 and 75.

On February 5, 2009, the parties reported that, despite nearly two months of discussion, there has been no progress toward resolution of the outstanding motions. *Joint Status Report,* Doc. No. 76. The

4

*Motion to Compel*, *Motion for Protective Order* and *Motion to Strike* remain unresolved and the Court will address each motion in turn.

**II. MOTION TO STRIKE**

Plaintiff contends that the supplemental affidavit of her expert, Rand Gulvas, supports her *Motion to Compel* because it establishes that "there is an additional common defect" between the dehumidifier model at issue and older dehumidifier models that have been recalled. *Motion for Leave*, p. 1 (attaching *Affidavit of Rand Gulvas*) ("*Supplemental Gulvas Aff.*" or "*Supplemental Gulvas Affidavit*"). Defendant moves, pursuant to Fed. R. Civ. P. 12(f), to strike all or part of the *Supplemental Gulvas Affidavit*, arguing that the affidavit is not relevant, is misleading and "suggests mere possibilities which do not rise to the level of probability needed to be admissible." *Motion to Strike*, pp. 2-6. Plaintiff responds that the *Motion to Strike* is procedurally improper, untimely and in fact supports her discovery requests. *Plaintiff's Memorandum in Opposition to Motion to Strike (Document 47)*, Doc. No. 54 ("*Plaintiff's Memo. in Opp. Motion to Strike*").

Rule 12(f) of the Federal Rules of Civil Procedure provides that a court "may strike *from a pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f)(emphasis added). Pleadings are defined as "a complaint; an answer to a complaint; an answer to a counterclaim designated as a counterclaim; an answer to a crossclaim; a third-party complaint; an answer to a third-party complaint; and, if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a). An affidavit is not a pleading within the definition of the rule. Moreover, an order to

5

strike is a "drastic remedy" that "should be sparingly used by the courts." *Mapp v. Bd of Educ.*, 319 F.2d 571, 576 (6th Cir. 1963). *See also In re Cardinal Health, Inc. Sec. Litigs.*, 426 F. Supp. 2d 688, 712 (S.D. Ohio 2006). Moreover, this circuit "prefers that claims be adjudicated on their merits." *Rose v. SSA*, No. 98-6491, 1999 U.S. App. LEXIS 34011, at *2 (6th Cir. Dec. 17, 1999) (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991)).

In this case, LG USA seeks to strike an affidavit submitted in support of plaintiff's *Motion to Compel*. As discussed *supra*, an affidavit attached to a discovery motion is not a "pleading" within the meaning of Fed. R. Civ. P. 7(a). Therefore, the *Supplemental Gulvas Affidavit* is not subject to a motion to strike under Rule 12(f). *Cf.* Fox *v. Mich. State Police Dep't*, No. 04-2078, 173 Fed. Appx. 372, at *375 (6th Cir. Feb. 24, 2006) (concluding that exhibits attached to a dispositive motion are not "pleadings" and therefore not subject to a motion to strike). *See also Huber v. Auglaize County Bd. of Elections*, No. 3:06 CV 1968, 2009 U.S. Dist. LEXIS 10057, at *10-11 (N.D. Ohio Feb. 11, 2009) (denying motion to strike affidavits submitted in support of motion for summary judgment because Rule 12(f) was "not the proper vehicle"). Accordingly, the *Motion to Strike* is **DENIED**.

**III. MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER**

    **A.    Applicable Standards**

        **1.    Motion to Compel**

Determining the proper scope of discovery falls within the broad discretion of the trial court. *Lewis v. ACB Business Services, Inc.*,

135 F.3d 389, 402 (6th Cir. 1998). Rule 37 of the Federal Rules of Civil Procedure authorizes a motion to compel discovery when a party fails to provide proper response to interrogatories under Rule 33 or requests for production of documents under Rule 34. Rule 37(a) expressly provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

Discovery may relate to any matter that can be inquired into under Rule 26(b). Fed. R. Civ. P. 33, 34. Rule 26(b)(1) authorizes discovery regarding any non-privileged matter relevant to the subject matter of the pending action. Fed. R. Civ. P. 26(b)(1). *See also Miller v. Federal Express Corp.*, 186 F.R.D. 376, 383 (W.D. Tenn. 1999) ("Relevancy for discovery purposes is extremely broad."). The information sought need not be admissible at trial so long as it appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). These discovery provisions are to be liberally construed. *Schlagenhauf v. Holder*, 379 U.S. 104, 114 (1964); *Dunn v. Midwestern Indem.*, 88 F.R.D. 191, 195 (S.D. Ohio 1980).

"Although a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted 'to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive.'" *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (quoting *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978)). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Martin v. Select*

7

*Portfolio Serving Holding Corp.*, No. 1:05-cv-273, 2006 U.S. Dist. LEXIS 68779, at *2 (S.D. Ohio Sept. 25, 2006) (citing *Alexander v. Fed. Bureau of Investigation*, 186 F.R.D. 154, 159 (D.D.C. 1999)).

The party moving to compel discovery responses must certify that it "has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 37(a)(1). *See also* S.D. Ohio Civ. R. 37.2. This prerequisite has been met in this case. *See* Exhibit 3, attached to *Motion to Compel*.[5]

### 2. Motion for Protective Order

Rule 26 of the Federal Rules of Civil Procedure provides that a person resisting discovery may move the court, for good cause shown, to issue an order protecting the person or party from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Accordingly, "an overly broad request for discovery which constitutes no more than a fishing expedition will not be allowed." *Isaac v. Shell Oil Co.*, 83 F.R.D. 428, 431 (E.D. Mich. 1979) ("Where a plaintiff has shown not even reasonable grounds to support his allegations of liability, and where the discovery costs faced by the defendant are substantial, justice requires that a protective order be granted."). Under Rule 26, a court may limit the scope of the disclosure or discovery to certain matters. Fed. R. Civ. P. 26(c)(1)(D). The grant or denial of motions for protective orders falls within the "broad discretion of the district court managing the

---

[5]LG USA withdrew its argument that plaintiff failed to comply with the federal and local rules. *See Motion for Protective Order*, pp. 5-6; *Stipulation of Parties Withdrawing Certain Arguments in Docs. 20 and 24*, Doc. No. 35 ("*Stipulation*").

8

case." *Century Prod., Inc. v. Sutter*, 837 F.2d 247, 250 (6th Cir. 1988).

The party seeking a protective order must certify that it "has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1). *See also* S.D. Ohio Civ. R. 37.2. This prerequisite has been met. *See* Exhibit C, attached to *Motion for Protective Order*.

> **B. Discovery concerning "any dehumidifier that has been sold or distributed by" LG USA or its parent company (Interrogatory Nos. 3, 6, 9, 10, 11 and 12; Request to Produce Nos. 2, 3, 4 and 5)**
>
> **1. Positions of the parties**

Plaintiff moves to compel discovery regarding "any dehumidifier that has been sold or distributed by" LG USA or its parent company, LG Electronics, including recalled units, during the period extending from January 1, 1999, to January 27, 2007. *See* Interrogatory Nos. 3, 6, 9, 10, 11 and 12; Request to Produce Nos. 2, 3, 4 and 5. Plaintiff contends that this information "may lead to relevant evidence concerning the nature and magnitude of the risk presented by Defendant's humidifiers[,];" "may be evidence of a flagrant disregard for the safety of the consumer;" and "may also be relevant on whether LG USA has a duty to issue a post-manufacture warning." *Motion to Compel*, p. 3; *Plaintiff's Reply Supporting Motion to Compel*, p. 2 (citing *First Gulvas Aff*). Plaintiff further contends that "a complete fire history dating back to 1999 is an essential part of the investigation into the death of Mr. Vertsman." *Plaintiff's Reply Supporting Motion to Compel*, pp. 6-7 (citing *First Gulvas Aff*).

9

In response, LG USA argues, *inter alia*, that it is appropriate to limit discovery to the dehumidifier model at issue or to substantially similar models. *Motion for Protective Order*, pp. 9-20 (citing *Declaration of Hyun Ho Seo*, attached as Exhibit A to *Motion for Protective Order* ("*Seo Decl.*"));[6] *LG USA's Reply Supporting Motion for Protective Order*. LG USA further argues that producing the broad range of requested information constitutes an undue burden involving "several hundred thousand dollars in time and expense." *Motion for Protective Order*, pp. 6-8, 19 (citing *Seo Decl.*); *LG USA's Reply Supporting Motion for Protective Order*, pp. 7-9.[7] LG USA's arguments are well-taken.

**2. Standard**

Courts generally permit "discovery of similar, if not identical, [product] models[.]" *Holfer v. Mack Trucks, Inc.*, 981 F.2d 377, 380-81 (8th Cir. 1992). *See also Hicks v. CNH America, LLC,* No. 3:04CV-366-H, 2005 U.S. Dist. LEXIS 31184, at *3-4 (W.D. Ky. Dec. 1, 2005) (prohibiting discovery concerning product model that "does not appear to share pertinent characteristics" with the subject model and therefore not reasonably calculated to lead to the discovery of admissible evidence); *Fine v. Facet Aerospace Products Co.*, 133 F.R.D.

---

[6]Mr. Seo is an engineer employed by LG Electronics. *Seo Decl.* ¶ 3. He is familiar with the model at issue in this litigation, recalled dehumidifier models and dehumidifiers manufactured over the relevant eight-year period, particularly those manufactured in 2004. *Id.* at ¶¶ 3-28.

[7]LG USA also objects to plaintiff's discovery requests to the extent that they seek production of confidential or proprietary business information without a mutually agreeable protective order. *Motion for Protective Order*, pp. 8-9. On June 11, 2008, a stipulated protective order was entered in this case. Doc. No. 40. Accordingly, LG USA's objection and request in this regard are now moot.

439, 441 (S.D. N.Y. 1990) ("Generally, different models of a product will be relevant if they share with the accident-causing model those characteristics pertinent to the legal issues raised in the litigation."). Permitting "discovery of models that are not substantially similar is truly the equivalent of comparing apples and oranges where there are differences between the other models and the model at issue." *Piacenti v. Gen'l Motors Corp.*, 173 F.R.D. 221, 225 (N.D. Ill. 1997). Conclusory generalities are insufficient to establish "substantial similarity." *See*, *e.g.*, *Gibson v. Ford Motor Co.*, 510 F. Supp.2d 1116, 1121 (N.D. Ga. 2007). A fact specific inquiry is therefore undertaken to determine the extent of the similarities or dissimilarities between models. *Holfer*, 981 F.2d at 381. *See also Gibson*, 510 F. Supp.2d at 1120 (stating that models must share "pertinent characteristics" and that courts must undertake a fact specific inquiry to determine similarities and dissimilarities).

In the context of determining admissibility of prior accidents involving various products, the United States Court of Appeals for the Sixth Circuit has concluded that "substantial similarity" exists in incidents involving the same model, the same design, the same defect and occurring under similar circumstances. *See*, *e.g.*, *Anderson v. Whittaker Corp.*, 894 F.2d 804, 813 (6th Cir. 1990). *See also Croskey v. BMW of North Am., Inc.*, 532 F.3d 511, 518 (6th Cir. 2008) ("Substantial similarity means that the accidents must have occurred under similar circumstances or share the same cause."); *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 297 (6th Cir. 2007) (same); *Rye v. Black & Decker Mfg. Co.*, 889 F.2d 100, 102 (6th Cir. 1989) (same).

### 3. Application

In the instant case, LG Electronics manufactures more than 100 different models of dehumidifiers. *Seo Decl.* ¶ 28. In 2001, several dehumidifier models were the subject of a voluntary recall. *Id*. at ¶ 4. After the recall, LG Electronics modified the design of its dehumidifiers in an effort to reduce the possibility of overheating. *Id*. at ¶ 5. Three years later, Model LD40, which is the dehumidifier model at issue in this litigation, was manufactured. This model incorporates a different design compared to the recalled units and units manufactured prior to 2004. *Id*. at ¶¶ 6-7.[8] LG USA contends that Model LD40 differs from the recalled and pre-2004 units in a number of respects: (1) the models operated at different volts of electrical current; (2) the recalled units did not use a transformer, while Model LD40 used a "step down" transformer; (3) different controls operated the electrical current in Model LD40 versus the recalled units; (4) the recalled units' defrost control was wrapped in butyl tape (a possible combustible), while Model LD40 did not use butyl tape (or any other potentially combustible insulator) in this location; (5) the recalled units used a printed circuit board, while Model LD40 did not; (6) the internal electronic components in the recalled units were not enclosed with components made of 100% steel, while Model LD40 was enclosed in a steel box and insulated from other combustibles; (7) Model LD40 used glass wool insulation, while the recalled units did not; and (8) the power cord in the recalled units ran between the fan and fan frame, while the power cord was re-routed

---

[8]Approximately 15,000 of these models were manufactured in 2004. *Id*. at ¶ 20.

away from the operating parts.  *Id*. at ¶¶ 7-19.

From 2004 to 2007, LG Electronics manufactured dehumidifiers in several different size capacities, ranging from 30 pints per day ("PPD") to 70 PPD.  *Id*. at ¶ 22.  These different size capacity models varied in several ways, including: (1) the amount of watts or input energy; (2) running current; (3) energy factor; (4) refrigerant type; (5) compressor model; (6) capacitor; (7) frame; (8) weight; and (9) fan motor assembly.  *Id*. at ¶ 23.

In addition, some of these different size capacity models used a manual or mechanical control (such as a dial or rocker switch), while other models used an electronic control (such as a touch pad).  *Id*. at ¶¶ 23-26.  Electronic control units use different wiring than that used in manual control units.  *Id*. at ¶ 24.

Model LD40 is a 40 PPD capacity unit with a manual control.  *Id*. at ¶¶ 22, 24.  LG USA represents that 40 PPD capacity models that use the same watts, running current, energy factor, refrigerant type, compressor model, capacitor and motor assembly include Models LD40, DH400M, GD40E, DH404E, DH400E and the LD40E.  *Id*. at ¶ 24.  However, Models GD40E, DH404E, DH400E and the LD40E use electronic controls rather than mechanical controls.  *Id*.

LG USA argues that discovery should be limited to the model at issue in this lawsuit, Model LD40 and/or DH400M.  *Motion for Protective Order*, pp. 15-16, 20.  Should the Court conclude that models with electronic controls may be relevant to plaintiff's claims, LG USA contends that discovery should be limited to Models LD40, DH400M, GD40E, DH404E, DH400E and the LD40E.  *Id*.

In response, plaintiff argues that LG Electronics dehumidifiers

13

sold between 1999 and 2007 are substantially similar because they have a "common purpose" and "likely" have a similar design defect. *Motion to Compel*, p. 3 (citing, *inter alia*, *Am. Honda Motor Co., Inc. v. Morales*, 151 F.3d 500 (6th Cir. 1998)); *Plaintiff's Reply Supporting Motion to Compel*, pp. 3-4 (citing, *inter alia*, *First Gulvas Aff.*). This Court disagrees. First, plaintiff's contention that *Morales* permits discovery relating to hundreds of dehumidifier models manufactured over an eight-year period simply because dehumidifiers in general may "have a common purpose, i.e., to remove moisture from the air," *First Gulvas Aff.*, ¶ 4, is over-broad and overly simplistic. Moreover, plaintiff's interpretation of *Morales* is inconsistent with more recent Sixth Circuit authority. *See Morales*, 151 F.3d 512 (concluding that the "substantially similar" requirement was met where a pertinent characteristic, *i.e.,* age appropriateness of a vehicle, was examined in light of the vehicle's purpose); *Croskey*, 532 F.3d at 518; *Surles*, 474 F.3d at 297. Second, as discussed *supra*, the differences between the recalled models, pre-2004 units and different size capacity models are both many and significant. The observations (and conjecture) contained in the affidavits of Mr. Gulvas (and other affiants)[9] fail to persuade this Court that the various models sought by plaintiff share the requisite "pertinent characteristics" and "substantial similarity." *See*, *e.g.*, *Anderson*, 894 F.2d at 813; *Brock v. Caterpillar, Inc.*, 94 F.3d 220, 225 (6th Cir. 1996) (concluding that certain bulldozers were dissimilar where, *inter alia*, they had

---

[9]*See* Exhibits 2 and 3, attached to *Plaintiff's Reply Supporting Motion to Compel*; Exhibits 1, 2 and 3, attached to *Plaintiff's Memo. in Opp. Motion to Strike*.

different size engines, different weights and brake boosting systems); *Hendrix v. Evenflo Co., Inc.*, No. 3:07cv133, 2008 U.S. Dist. LEXIS 38088, at *12-13 (N.D. Fla. May 9, 2008) (affirming earlier conclusion that "the accident at issue in the instant case and the accidents leading to the recall were not substantially similar to justify recall-related discovery"); *Piacenti*, 173 F.R.D. at 225.

Morever, even if plaintiff could demonstrate that these different models were substantially similar and therefore relevant, the evidence before the Court establishes that retrieving information concerning more than 100 different models of dehumidifiers over an eight-year period "would require extensive research and document retrieval involving hundreds of man-hours of LG personnel in several countries and would constitute an undue burden." *Seo Decl*. ¶ 28. In short, the attenuated relevance of plaintiff's discovery requests, coupled with the burdensome nature of the requests, persuade this Court that the broad range of discovery requested by plaintiff is not appropriate. *See* Fed. R. Civ. P. 26(c)(1); *Surles*, 474 F.3d at 305; *Isaac*, 83 F.R.D. at 431.

The Court will therefore limit discovery in this case to Models LD40, DH400M, GD40E, DH404E, DH400E and LD40E.[10] The Court will further limit discovery to information and documents in the possession and custody of LG USA, relieving LG USA of the burden of searching for and producing information in the hands of its Korean parent, LG Electronics. Accordingly, as it relates to discovery requests seeking

---

[10]The Court is unpersuaded that "different control wiring," *Seo Decl*. ¶ 24, with no additional explanation, renders models with manual controls substantially different from those models with electronic controls.

information and documents regarding "any dehumidifier," Interrogatory Nos. 3, 6, 9, 10, 11, 12 and Requests to Produce Nos. 2, 3, 4, 5, the *Motion for Protective Order* is **GRANTED** and the *Motion to Compel* is **GRANTED in part and DENIED in part** consistent with the foregoing.

### C. Discovery concerning "the dehumidifier which is the subject of this litigation" (Interrogatory Nos.4 and 7)

#### 1. Alternative designs (Interrogatory No. 4)

Plaintiff seeks to compel production of information regarding "alternative designs or alternative components available at the time of [the subject dehumidifier's] manufacture that would reduce the risk of overheating or fire[.]" Interrogatory No. 4. LG USA initially objected to this interrogatory, but stated that it would "produce relevant responsive documents pursuant to a mutually agreeable confidentiality agreement or protective order." Answer to Int. No. 4. Subsequent to briefing the *Motion to Compel* and *Motion for Protective Order*, a stipulated protective order was entered in this case. Doc. No. 4. Based on the record presently before the Court, it is not immediately clear that a dispute remains regarding this discovery request. Accordingly, as to Interrogatory No. 4, the *Motion to Compel* is **DENIED**.

#### 2. Technology that senses an overheating condition or fire and technology that shuts off dehumidifier in the event of overheating or fire (Interrogatory No. 7)

Plaintiff seeks to compel information concerning technology used to "[s]ense an overheating condition or fire" and technology used to "[s]hut off the dehumidifier in the event of overheating or fire[.]" Interrogatory No. 7. In addition, plaintiff seeks to determine

"whether, and to what extent, there have been any changes in said technology from January 1, 1999 to the present."  *Id*.  LG USA initially objected to this interrogatory, but later represented that it "has been provided with design drawings and information relative to the LD40 and comparable models and has already agreed to provide these documents to Plaintiff pursuant to an agreeable Stipulated Protective Order which the parties are currently drafting."  *LG USA's Reply Supporting Motion for Protective Order*, pp. 10-11.  As discussed *supra*, a stipulated protective order was subsequently entered in this case.  Therefore, based on the record presently before the Court, it is not immediately clear that a dispute remains regarding this discovery request.  Accordingly, as to Interrogatory No. 7, the *Motion to Compel* is **DENIED**.

**WHEREUPON**, *Defendant LG Electronics U.S.A., Inc.'s Motion to Strike Supplemental Affidavit of Rand Gulvas*, Doc. No. 47, is **DENIED**.  In addition, *Plaintiff's Motion to Compel*, Doc. No. 19, is **DENIED in part and GRANTED in part**, and *Defendant LG Electronics U.S.A., Inc.'s Combined Motion for Protective Order and Memorandum in Opposition to Plaintiffs [sic] Motion to Compel Discovery*, Doc. No. 20, is **GRANTED** in accordance with this *Opinion and Order*.  LG USA must supplement its discovery responses and produce all discovery required by this *Opinion and Order* within fourteen (14) days of the date of this *Opinion and Order.*

February 20, 2009                         *s/Norah McCann King*
                                    Norah M<sup>c</sup>Cann King
                              United States Magistrate Judge