UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ELENA TOLSTIH, Individually
and as Administrator of the
Estate of Gregory Vertsman,**

       **Plaintiff,**              Case No. 2:07-cv-582
                                           **JUDGE GREGORY L. FROST**
      **v.**                         Magistrate Judge Norah McCann King

**L.G. ELECTRONICS, U.S.A., INC., et al.,**

       **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of the following filings:

(1) a motion *in limine* directed toward the testimony of Michael DeFrancisco filed by Defendants LG Electronics and LG Electronics U.S.A., Inc. (Doc. # 106), a memorandum in opposition filed by Plaintiff, Elena E. Tolstih (Doc. # 123), and a reply memorandum filed by Defendants (Doc. # 128);

(2) a motion *in limine* directed toward the testimony of David Thompson filed by Defendants (Doc. # 107), a memorandum in opposition filed by Plaintiff (Doc. # 122), and a reply memorandum filed by Defendants (Doc. # 129);

(3) a motion *in limine* directed toward the testimony of Rand Gulvas filed by Defendants (Doc. # 108), a memorandum in opposition filed by Plaintiff (Doc. # 124), and a reply memorandum filed by Defendants (Doc. # 127);

(4) a motion for partial summary judgment on compensatory damages filed by Defendants (Doc. # 109), a memorandum in opposition filed by Plaintiff (Doc. # 125), and a

1

reply memorandum filed by Defendants (Doc. # 126); and

(5) a motion for partial summary judgment on punitive damages filed by Defendants (Doc. # 110) and a response filed by Plaintiff (Doc. # 121).

For the reasons that follow, the Court **DENIES** the motions *in limine* (Docs. # 106, 107, 108), **DENIES** the compensatory damages summary judgment motion (Doc. # 109), and recognizes that the punitive damages summary judgment motion is moot (Doc. # 110).

## I. Background

Plaintiff, Elena Tolstih, is the widow of Gregory Vertsman, as well as the administrator of his estate. On January 27, 2007, a fire broke out in the basement of the townhouse apartment in which Plaintiff and Vertsman lived. Vertsman, who was in the basement at the time of the fire, died. Plaintiff, who was upstairs at the time of the fire, suffered injuries for which she was hospitalized. Plaintiff's theory is that the fire was caused by a faulty model LD40 dehumidifier designed, manufactured, and distributed by Defendants, L.G. Electronics, USA, Inc. and L.G. Electronics, Inc. Consequently, Plaintiff filed the instant suit on June 18, 2007, in her individual capacity and as the administrator of Vertsman's estate. The three-count Complaint asserts a wrongful death claim, a survivorship claim, and a personal injury claim. (Doc. # 2 ¶¶ 1-15.) The pleading also seeks punitive damages.

Defendants have filed two motions for partial summary judgment, one targeting compensatory damages and one targeting punitive damages. (Docs. # 109, 110.) Defendants have also filed three threshold motions *in limine* attacking various expert testimony. (Docs. # 106, 107, 108.) The parties have completed briefing on all the pending motions, which are ripe for disposition.

## II. Motions *in limine*

### A. Standard involved

A ruling on a motion *in limine* is "no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court, and the district court may change its ruling where sufficient facts have developed that warrant the change." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994). A court has the power to exclude evidence *in limine* only when evidence is clearly inadmissible on all potential grounds. *Cf. Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (federal district courts have authority to make *in limine* rulings pursuant to their authority to manage trials). Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in the proper context. A court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion *in limine*. *See United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989) (citing *Luce*, 469 U.S. at 41)). Courts are generally reluctant to grant broad exclusions of evidence *in limine* because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Weimer v. Honda of Am. MFG., Inc.*, No. 2:06-cv-844, 2008 WL 4346786, at *1 (S.D. Ohio Sept. 18, 2008) (citing *Koch v. Koch Indus., Inc.*, 2 F. Supp. 2d 1385, 1388 (D. Kan. 1998)). Therefore, the sagacious use of the motion *in limine* not only defines the focus of later trial proceedings, but also permits the parties to focus their preparation on matters that will be considered by the jury. *See Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997).

All three of the motion *in limine* under consideration today implicate concerns related to

Federal Rule of Evidence 702 and the test set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The United States Supreme Court held in *Daubert* that the Federal Rules of Evidence had superseded the "general acceptance" test of *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), and that Rule 702 requires that trial judges perform a "gate-keeping role" when considering the admissibility of expert testimony. *Daubert,* 509 U.S. at 597. The relevant Federal Rule of Evidence is Rule 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Further, the Supreme Court has made clear that Rule 702 applies not only to scientific testimony but also to other types of expert testimony based on technical or other specialized knowledge. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 149 (1999).

The trial court's gate-keeping role is two-fold. First, the Court must determine whether the proffered testimony is reliable. *See Daubert*, 509 U.S. at 590. The reliability assessment focuses on whether the reasoning or methodology underlying the testimony is scientifically valid. *Id.* The expert's testimony must be grounded in the methods and procedures of science and must be more than unsupported speculation or subjective belief. *Id.* Thus, the proponent of the testimony does not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence, it is reliable. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3rd Cir. 1994).

The Supreme Court in *Daubert* set out four non-exclusive factors to aid in the

determination of whether an expert's methodology is reliable. They are:

> (1) whether the theory or technique has been tested;
> (2) whether the theory or technique has been subjected to peer review and publication;
> (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and
> (4) whether the theory or method has been generally accepted by the scientific community.

*Daubert*, 509 U.S. at 593-94. *See also Deal v. Hamilton County Bd. of Ed.*, 392 F.3d 840, 851 (6th Cir. 2004). The Court in *Kumho Tire* stressed that, in assessing the reliability of expert testimony, whether scientific or otherwise, the trial judge may consider one or more of the *Daubert* factors when doing so will help determine that expert's reliability. *Kumho Tire*, 526 U.S. at 150. The test of reliability is a "flexible" one, however, and the four *Daubert* factors do not constitute a "definitive checklist or test" but must be tailored to the facts of the particular case. *Id.* (quoting *Daubert,* 509 U.S. at 593); *see also Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 470 (6th Cir. 2004). The particular factors will depend upon the unique circumstances of the expert testimony involved. *See Kumho Tire Co.*, 526 U.S. at 151-52.

The second prong of the gate-keeping role requires an analysis of whether the expert's reasoning or methodology can be properly applied to the facts at issue, that is, whether the opinion is relevant to the facts at issue. *See Daubert*, 509 U.S. at 591-93. This relevance requirement ensures that there is a "fit" between the testimony and the issue to be resolved by the trial. *See United States v. Bonds*, 12 F.3d 540, 555 (6th Cir. 1993). Thus, an expert's testimony is admissible under Rule 702 if it is predicated upon a reliable foundation and is relevant.

5

The United States Supreme Court and courts of appeals have made clear that a person, although qualified as an expert in one area of expertise, may be precluded from offering opinions beyond that area of expertise or that are not founded on a reliable methodology. *See, e.g., Kumho Tire Co., Ltd.*, 526 U.S. at 154-55 (finding the proffered expert qualified as an expert in mechanical engineering, but that his methodology in analyzing a particular tire failure was not reliable); *Weisgram v. Marley Co.*, 169 F.3d 514, 518 (8th Cir. 1999) (holding that a city fire captain, although qualified as an expert on fire investigation and therefore qualified to testify as to his opinion that a fire started in the entryway and radiated to a sofa, was not qualified to testify as to his unsubstantiated theories of a malfunction that might have caused the fire); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1317-19 (11th Cir. 1999) (proposed expert testimony of pathologist not permitted upon basis of unreliable methodologies in silicon breast implant case); *Cummins v. Lyle Indus.*, 93 F.3d 362, 371 (7th Cir. 1996) (industrial engineer not permitted to render an expert opinion regarding the adequacy of warnings, the adequacy of an instruction manual, and the feasibility of alternative designs for a trim press).

The gatekeeper role, however, is not intended to supplant the adversary system or the role of the jury; rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The judge's role is simply to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value. *Wellman v. Norfolk and W. Ry. Co.*, 98 F. Supp. 2d 919, 923-24 (S.D. Ohio 2000). Guided by these concerns, the Court shall proceed to address each motion *in limine* in turn.

### B. Michael DeFrancisco

Defendants seek to prevent City of Columbus fire investigator Michael DeFrancisco from offering or referring to opinions as to whether the humidifier was plugged in or running prior to the fire, whether Vertsman unplugged appliances and, if so, which appliances, whether the fire started inside or outside the dehumidifier, whether the dehumidifier caused the fire, and what actions Vertsman took before and during the fire. They argue that DeFrancisco's investigation was inadequate and point to numerous examples in his deposition testimony where he could not recall facts or contradicted his own prior statements. Defendants also assert that DeFrancisco's investigation techniques failed to preserve evidence, which in turn prevented subsequent investigators from determining the exact origin of the fire. Finally, Defendants additionally posit both that DeFrancisco lacks the background to render the opinion he offered and that these purportedly tainted opinions were based in part on his erroneous recollection of what Plaintiff had told him regarding whether the dehumidifier was routinely kept plugged in and running.

Plaintiff opposes exclusion of DeFrancisco's testimony. She disputes that DeFrancisco's conduct amounts to sanctionable spoliation. Plaintiff points out that DeFrancisco is not a retained expert but a city fire investigator who conducted a reasonable investigation and generated his opinions based on the results of that investigation. Plaintiff also notes that Defendants' argument that no subsequent investigator could thus determine the exact cause of the fire is disingenuous, given that Defendants have offered expert opinion excluding the dehumidifier as a potential cause fo the fire. Plaintiff also directs the Court to the fact that Defendants' own experts stated that an investigator can take into account human behavior in his or her analysis, which Plaintiff asserts DeFrancisco did in offering an opinion as to what

7

Vertsman did before succumbing to the fire.

Notably, Plaintiff has made a number of apparent concessions in her briefing. She represents that DeFrancisco will not testify about what potentially malfunctioned within the dehumidifier or such engineering issues. Plaintiff also appears to concede that any testimony as to whether Vertsman tried to escape by climbing through the window is speculation. More directly, Plaintiff concedes in her memorandum in opposition that "DeFrancisco can certainly be prohibited from testifying that he believes the dehumidifier was plugged in at the start of the fire based on his faulty recollection of his interview of Elena Tolstih." (Doc. # 123, at 12.) This Court agrees. Given these concessions, it appears that Plaintiff does not intend to offer DeFrancisco as an expert opining on (1) engineering issues, (2) whether Vertsman attempted to climb on the refrigerator, and (3) whether the dehumidifier was initially plugged in because of DeFrancisco's flawed recollection of his interview with Plaintiff. These representations by Plaintiff moot those aspects of the motion *in limine* targeting these specific areas of DeFrancisco's testimony. Plaintiff is correct that DeFrancisco can nonetheless offer an opinion as to the state of the dehumidifier based on the alternative grounds discussed in the briefing.

This Court in its discretion declines Defendants' inequitable invitation to punish Plaintiff for any failure by city investigators to maintain the fire scene and the evidence therein. Plaintiff has offered in her briefing ample authority supporting the unremarkable proposition that she should not be sanctioned for the conduct of a third party over whom she has had no control, and to conclude otherwise would be to ignore both that case law and common sense.

The Court also declines to exclude DeFrancisco's testimony on the basis that perhaps his investigation was not the textbook inquiry Defendants profess they wish had occurred. There is

8

a reasonable methodology to DeFrancisco's investigation and the resulting opinions he offers that protects against their exclusion. *See Bitler v. A.O. Smith Corp.*, 391 F.3d 1114, 1122 (7th Cir. 2004) ("Employing his experience and knowledge as a fire investigator, [the expert] observed the physical evidence at the scene of the accident and deduced the likely cause of the explosion. Although such a method is not susceptible to testing or peer review, it does constitute generally acceptable practice as a method for fire investigators to analyze the cause of fire accidents. Nothing in Rule 702 or *Daubert* requires more." (citation omitted)). DeFrancisco's personal experience, training, method of observation, and deductive reasoning enable him to offer opinions that meet the basic threshold for admission. *See id.* Defendants' arguments, including those targeting DeFrancisco's inability to rule out other potential causes of the fire, thus go to the weight rather than the admissibility of his opinions and testimony. *See Jahn v. Equine Servs., PSC*, 233 F.3d 382, 390 (6th Cir. 2000).

In light of the foregoing, the Court **DENIES** Defendants' motion *in limine*, except for the moot aspects of the motion targeting speculation and the unreliable recollection as noted above. (Doc. # 106.) As with all *in limine* decisions, this ruling is subject to modification should the facts or circumstances at trial differ from that which has been presented in the pre-trial motion and memoranda.

### C. David Thompson

Defendants seek to exclude the testimony of fire investigator David Thompson on a number of specific topics. They first seek to exclude his offering an opinion as to cause of death. In her memorandum in opposition, however, Plaintiff states that she will not elicit testimony regarding Vertsman's cause of death from Thompson. Consequently, although Defendants argue

9

that Plaintiff's representation necessitates granting this aspect of their motion *in limine*, the motion is more properly regarded as moot in this regard.

Defendants next argue for exclusion of Thompson's opinion that the fire originated in the area of the dehumidifier. They reason that because Thompson relied on the findings and opinions of DeFrancisco, Thompson's opinion warrants preclusion. But as Plaintiff notes in her opposition brief, Thompson conducted his own investigation, relying on DeFrancisco primarily to ascertain the location of the dehumidifier. Thompson's reliance on a factual representation of DeFrancisco, as opposed to relying –or essentially adopting–the opinion of DeFrancisco as his own, distinguishes the situation here from that found in *Weisgram v. Marley Co.*, 169 F.3d 514 (8th Cir. 1999), the case upon which Defendants rely as authority for exclusion. In contrast, the authority to which Plaintiff directs this Court in her briefing supports Thompson's reliance on DeFrancisco's observation of the facts and the consequent admissibility of Thompson's testimony. Thompson's testimony can assist the trier of fact, and his inability to provide specificity regarding the precise location of the dehumidifier goes directly to the weight rather than the admissibility of his testimony.

As they did with DeFrancisco, Defendants also move for exclusion of Thompson's testimony on the grounds that he has failed to rule out other potential causes of the fire. Again, however, Defendants attempt to impose too stringent a standard. The law simply does not require an expert to eliminate all possible causes. *See Jahn*, 233 F.3d at 390. Similarly, as discussed in the preceding section, an expert such as Thompson can permissibly offer an opinion as to what actions he thinks Vertsman undertook in regard to de-energizing the dehumidifier.

Defendants next argue that Thompson impermissibly relies upon DeFrancisco stating that

he "felt" that the dehumidifier had been plugged in and DeFrancisco having the "impression" that Vertsman had unplugged all appliances, including the dehumidifier. They contend that Thompson has "elevate[d] these feelings and impressions to the level of an 'opinion' by DeFrancisco" and that "Thompson should be precluded from referring to DeFrancisco's imaginings." (Doc. # 107, at 11.) Plaintiff in turn counters that Defendants are taking issue with semantics and suggests that Thompson can simply testify that DeFrancisco informed him of these opinions. This Court agrees with Plaintiff.

Finally, in their reply memorandum, Defendants argue that Thompson failed to properly disclose in his expert report his opinion–to the extent that his deposition can be read to present such an opinion–that the dehumidifier caused the fire. Therefore, Defendants reason, the Court should preclude Thompson from testifying that the dehumidifier caused the fire. Defendants failed, however, to raise this specific argument in their motion *in limine*. This Court therefore will not consider Defendants' belated argument, which should and could have been asserted in the motion. *See Piergallini v. Alfa Leisure, Inc.*, No. 2:06-cv-0555, 2008 WL 687167, at \*5 (S.D. Ohio Mar. 11, 2008) (declining to address an argument improperly raised for the first time in a reply memorandum); *Ferron v. Search Cactus, L.L.C.*, No. 2:06-cv-327, 2007 WL 1792332, at \*4 (S.D. Ohio June 19, 2007) (rejecting an argument improperly raised for the first time in a reply memorandum).

The Court **DENIES** Defendants' motion *in limine*, except for the moot aspect of the motion targeting testimony regarding cause of death as noted above. (Doc. # 107.) As with the DeFrancisco motion *in limine* decision, this ruling is similarly subject to modification should the facts or circumstances at trial differ from that which has been presented in the pre-trial motion

11

and memoranda.

### D. Rand Gulvas

In their last motion *in limine*, Defendants seek to exclude opinions and testimony of electrical engineer Rand Gulvas, an expert for Plaintiff. Defendants argue that Gulvas has failed to support his opinions with any acceptable scientific basis or physical evidence. Plaintiff disagrees and asserts that Defendants incorrectly ask this Court to weigh the potential evidence by engaging in credibility determinations and assessing the validity of the expert conclusions.

This Court agrees that Defendants' objections target the weight of the evidence and are proper subjects for cross-examination and closing argument. The fact that physical testing on the fan speed control switch is not impossible does not preclude Gulvas' theory as Defendants posit; rather, this fact simply provides a basis on which to attack his opinion. Similarly, the fact that Defendants' experts disagree with Gulvas' reading of the fire patterns and heat damage to the unit does not render his opinion inadmissible. There is also no basis to reject Gulvas' testimony as failing to credit the existence of the automatic de-icer when he is not required to do so. Gulvas' explanation appears to account for automatic de-icing and proceeds to extrapolate possible consequences arising from the fan nonetheless continuing to run. The foundation for some of Gulvas' conclusions therefore may or may not be shaky, but the methodology he has employed is not so unreliable so as to render his testimony inadmissible. Although it appears he might have been able to do more in terms of testing, this again is a weight issue for the trier of fact to resolve.

Similar to concessions made in response to the other two motions *in limine*, Plaintiff has again represented that it will not elicit certain testimony, specifically testimony by Gulvas

12

regarding the toxicity or flammability of plastics.  Plaintiff has also represented that she will not seek to have Gulvas testify regarding fires in LG dehumidifiers other than fires involving the same unit at the heart of this litigation.  These concessions and representations moot the corresponding portions of Defendants' briefing that addresses these issues.

The Court therefore **DENIES** Defendants' motion *in limine*, except for the moot aspects of the motion noted above.  (Doc. # 108.)  This ruling is also subject to modification should the facts or circumstances at trial differ from that which has been presented in the pre-trial motion and memoranda

### III.  Summary judgment motions

#### A.  Standard involved

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case.  *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial.  *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

**B. Motion on compensatory damages**

Defendants move for partial summary judgment on the following theories of liability contained in Plaintiff's Complaint: (1) that there was a manufacturing or design defect and a lack of adequate pre-marketing and post-marking warnings and instructions, (2) that there was negligence in the manufacturing, design, and provision of adequate pre-marketing and post-marketing warnings or instructions, and (3) that there was a breach of express warranties and implied warranties of merchantability and fitness for a particular purpose. In her response, Plaintiff has voluntarily withdrawn the failure-to-warn and warranty claims. (Doc. # 125, at 9.) Construing this representation of a voluntary withdrawal as seeking amendment of the Complaint, this Court grants the amendment and recognizes that those aspects of Defendants' motion targeting the withdrawn components of the pleading are moot.

This leaves potentially susceptible to summary judgment Plaintiff's claims that the fire was caused by a manufacturing defect, a design defect, or both defects in the dehumidifier. The Ohio Products Liability Act governs this manufacturing defect claim, providing that "[a] manufacturer is subject to liability for compensatory damages based on a product liability claim only if the claimant establishes, by a preponderance of the evidence . . . [that] the manufacturer's product in question was defective in manufacture or construction as described in section 2307.74

of the Revised Code." Ohio Rev. Code § 2307.73(A)(1). Section 2307.74 in turn explains what constitutes an actionable manufacturing or construction defect:

> A product is defective in manufacture or construction if, when it left the control of its manufacturer, it deviated in a material way from the design specifications, formula, or performance standards of the manufacturer, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards. A product may be defective in manufacture or construction as described in this section even though its manufacturer exercised all possible care in its manufacture or construction.

Ohio Rev. Code § 2307.74. The Sixth Circuit has summarized such a manufacturing defect claim as requiring that a "plaintiff must show by a preponderance of the evidence that: (1) the product was defective; (2) the defective aspect of the product was the proximate cause of the injury; and (3) the defective product was actually manufactured by the defendant." *Yanovich v. Zimmer Austin, Inc.*, 255 F. App'x 957, 960 (6th Cir. 2007).

As Plaintiff correctly notes in her briefing, Defendants' summary judgment attack on the manufacturing defect claim hinges on whether this Court excludes Gulvas' testimony. Defendants in fact state in their briefing that "[s]hould the Court exclude the opinions of Mr. Gulvas, Plaintiff is without any admissible evidence to support her manufacturing defect claim, and summary judgment in favor of Defendants is appropriate." (Doc. # 109, at 10.) In light of the Court's disposition of the motions *in limine* and necessarily drawing all reasonable inferences in Plaintiff's favor, this Court must recognize that a genuine issue of material fact exists that prevents this Court from concluding that Defendants are entitled to judgment as a matter of law on the manufacturing defect claim. As the record evidence cited in the briefing demonstrates, the parties have offered contradicting expert opinions as to whether the dehumidifier caused the fire and, if so, whether there was an underlying manufacturing defect. This Court cannot weigh that evidence. The Court therefore **DENIES** that aspect of the

15

summary judgment motion related to the manufacturing defect claim. (Doc. # 109.)

Plaintiff's remaining claim is the design defect claim, which the Ohio Products Liability Act also governs. Under the Act, "[a] manufacturer is subject to liability for compensatory damages based on a product liability claim only if the claimant establishes, by a preponderance of the evidence . . . [that] the manufacturer's product in question . . . was defective in design or formulation as described in section 2307.75 of the Revised Code." Ohio Rev. Code § 2307.73(A)(1). Section 2307.75 provides that "a product is defective in design or formulation if, at the time it left the control of its manufacturer, the foreseeable risks associated with its design or formulation . . . exceeded the benefits associated with that design or formulation . . . ." Ohio Rev. Code § 2307.75(A). Section 2307.75(B) in turn provides a non-exhaustive list of factors involved in determining the foreseeable risks are determined, while § 2307.75(C) provides a non-exhaustive list of factors involved in determining the benefits.

Again targeting Gulvas' testimony, Defendants argue that Plaintiff has failed to identify a design defect. They also assert that Gulvas "ma[de] no effort to analyze the risk and benefit factors set forth in R.C. § 2307.75 to support a claim of design defect." (Doc. # 109, at 15.) Plaintiff counters that the evidence satisfies § 2307.75(B). She also posits that her evidence targeting a faulty fan control switch addresses § 2307.75(C) because such a defect does not present "any increased benefit of the dehumidifier." (Doc. # 125, at 16.) Such argument relies heavily on inference, with the implication being that Gulvas' testimony inherently addresses the statutory concerns and mandated weighing. This issue presents an exceptionally close call, but drawing all reasonable inferences in Plaintiff's favor and noting the dearth of specific, substantive argument on both sides regarding the relevant factors, this Court concludes that

16

because it cannot weigh conflicting testimony and settle the dispute, that task remains within the province of the jury. Accordingly, the Court **DENIES** Defendants' motion for partial summary judgment in regard to the design defect claim. (Doc. # 109.)

Having reached this conclusion, the Court must emphasize the necessarily limited nature of its analysis. It is important to note that Defendants also assert in their reply memorandum that "Plaintiff presents no alternative design" and that "Plaintiff does not address the technical or economic feasibility of an alternative design or the balance of 'risk v. benefit' such a design would pose." (Doc. # 126, at 9.) Citing case law supporting the undebatable proposition that Plaintiff must introduce evidence of an alternative feasible design, Defendants conclude that '[i]n the absence [of] admissible evidence of a feasible alternative design, Plaintiff cannot prevail on her design claim here." (*Id.*)

Defendants cannot obtain summary judgment on this argument because Defendants curiously waited until the reply memorandum to raise the argument for the first time. In neither the motion for partial summary judgment nor in its accompanying memorandum in support do Defendants present their "alternative feasible design" argument. *Compare* Doc. # 109, at 1, 15-16 *with* Doc. # 126, at 9. Although they generically reference § 2307.75(C) in their initial briefing, Defendants fail to present analysis of that statutory provision and its internal references to alternative designs or formulations. This proves problematic for Defendants because, as noted above in the motions *in limine* discussion, a party cannot withhold an argument until a reply memorandum and then assert that argument for the first time. *Reed v. Freebird Film Productions, Inc.*, No. 1:08CV1761, 2009 WL 3063364, at *4 (N.D. Ohio Sept. 22, 2009) ("Courts should not consider arguments and evidence introduced for the first time in a reply

17

brief, because to do so, denies the opponent any opportunity to respond." (citing *Rush v. Illinois Cent. R.R. Co.*, 399 F.3d 705, 727 n.19 (6th Cir. 2005)). *See also United States Sec. & Exch. Comm'n v. Sierra Brokerage Servs. Inc.*, 608 F. Supp. 2d 923, 952 n.29 (S.D. Ohio 2009); *Evans v. Midland Funding LLC*, 574 F. Supp. 2d 808, 817 n.2 (S.D. Ohio 2008). The Court therefore has declined to consider the alternative feasible design argument as grounds for summary judgment, regardless of the merits of that argument.

**C. Motion on punitive damages**

Defendants also move for partial summary judgment on Plaintiff's claim for punitive damages. In response, Plaintiff has voluntarily withdrawn her claim for punitive damages. (Doc. # 121, at 1.) Construing this voluntary withdrawal as seeking amendment of the Complaint, this Court grants the amendment and recognizes that Defendants' motion targeting punitive damages is moot.

## IV.  Conclusion

For the foregoing reasons, this Court **DENIES** the motion *in limine* directed toward the testimony of DeFrancisco (Doc. # 106), **DENIES** the motion *in limine* directed toward the testimony of Thompson (Doc. # 107), and **DENIES** the motion *in limine* directed toward the testimony of Gulvas (Doc. # 108).  The Court also **DENIES** the motion for partial summary judgment related to compensatory damages (Doc. # 109).  This Court recognizes that the motion for partial summary judgment related to punitive damages is moot and instructs the Clerk to terminate that motion on the docket.  (Doc. # 110.)

**IT IS SO ORDERED**.

        /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE